JOHN McDERMOTT v. P. H. HALLECK, *Receiver*.

No. 11,490.    (59 Pac. 1074.)

1. BANKS AND BANKING—*Distribution of Assets by Receiver.* Thomas Kirby, the sole owner and manager of a bank, gave his personal notes to the plaintiff in evidence of individual indebtedness. The banking business was conducted under the name of "The Thomas Kirby Bank." *Held*, that the creditor holding such notes is not prevented by any of the provisions of chapter 43, Laws of 1891, nor by section 36 of chapter 47, Laws of 1897 (Gen. Stat. 1897, ch. 18, § 6; Gen. Stat. 1899, § 442), from sharing in the distribution of the assets of the bank, after insolvency, equally with its depositors and other creditors.

2. ———— *Statute Construed.* Section 42 of chapter 47, Laws of 1897 (Gen. Stat. 1897, ch. 18, § 10; Gen. Stat. 1899, § 448), does not affect the remedy of a creditor of such banker in the collection of a debt contracted before the passage of the act.

Error from Dickinson district court; O. L. MOORE, judge. Opinion filed February 10, 1900. Reversed.

*Valentine, Godard & Valentine,* for plaintiff in error.

*T. E. Dewey,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Plaintiff in error filed his application in the district court, asking for an allowance of claims aggregating over $4500 against the Thomas Kirby Bank, which was at the time in the custody of P. H. Halleck, as receiver, appointed by the district court on petition of the attorney-general at the instance of the bank commissioner, under chapter 47, Laws of 1897 (Gen. Stat. 1897, ch. 18, §§ 1-67; Gen. Stat. 1899, §§ 407-470). The indebtedness is in the form of notes executed or indorsed by Thomas Kirby individually in 1892 and 1893. Defendant in error was appointed receiver for the assets of the bank in July,

1898, and afterward took charge of the same. Thomas Kirby was the sole owner and manager of the bank. It had no directors or stockholders, but was simply a private concern, the property of an individual. The district court refused the allowance of the indebtedness as a charge against the property and funds in the custody of the receiver on the ground that the affairs of the bank were being wound up by him for the benefit of its depositors, creditors, and stockholders.

Chapter 43 of the Laws of 1891 (which was in force at the time the notes in question were executed) created the office of bank commissioner and gave him general supervision over the affairs of state banks. The first section of that act provided that any five or more persons might organize themselves into a banking association and should be permitted to carry on the business of receiving money on deposit, allowing interest thereon, buying and selling exchange, gold, silver, coin, bullion, uncurrent money, bonds of the United States, the state of Kansas, etc., loan money on real estate and personal security, and discount negotiable and non-negotiable notes. Section 2 required that the capital stock should not be less than $5000, and that the charter should contain the names and places of residence if its shareholders and the amount of stock subscribed by each, etc. The act seemed to have particular reference to incorporated banks, and prescribed penalties on directors and officers for misconduct in the management of their affairs. Section 35, however, read :

"Any individual, firm or association who shall receive money on deposit, whether on time certificates or subject to check, shall be considered as doing a banking business, and shall be amenable to all the provisions of this act."

Section 26 made it the duty of the attorney-general,

upon receiving notice from the bank commissioner of a bank's insolvency, "immediately to institute proper proceedings in the proper court for the purpose of having a receiver appointed to take charge of such bank, and to wind up the affairs and business thereof for the benefit of the depositors, creditors and stockholders thereof." The act of 1891 was repealed by chapter 47 of the Laws of 1897. (Gen. Stat. 1897, ch. 18, §§ 1–67; Gen. Stat. 1899, §§ 407–470.) Sections 36 and 42 of the latter act read:

"SEC. 36. Any individual, firm or corporation who shall receive money on deposit, whether on certificates or subject to check, shall be considered as doing a banking business and shall be amenable to all the provisions of this act: *Provided*, that promissory notes issued for money received on deposit shall be held to be certificates of deposit for the purposes of this act." (Gen. Stat. 1897, ch. 18, § 6; Gen. Stat. 1899, § 442.)

"SEC. 42. Any individual or firm doing business as a private bank shall designate a name for such bank; and all property, real or personal, owned by such bank shall be held in the name of the bank, and not in the name of the individual or firm; all of the assets of any private bank shall be exempt from attachment or execution by any creditor of such individual or firm until all liabilities of such bank shall have been paid in full. No private banker shall use any of the funds of his bank for his private business, and the note of the owner or owners of any private bank shall not be considered or accepted as a part of its assets." (Gen. Stat. 1897, ch. 18, § 10; Gen. Stat. 1899, § 448.)

It also contains a provision like that in section 26 of the law of 1891.

Thomas Kirby was doing business individually as a bank, and was liable personally on the notes in question to the plaintiff in error. Unless there be some express provision of law authorizing the withdrawal of a part of his assets from appropriation to

the payment of said notes, and postponing the claims of plaintiff in error, it ought not to be done. We think the right of the plaintiff in error to participate in the distribution of the assets of the bank in the hands of the receiver is to be determined under chapter 43 of the Laws of 1891. The indebtedness in question was created while that law was in force. Section 26 of that act relates to the procedure to be had upon a discovery by the bank commissioner of a bank's insolvency. The provision is very general in its scope as to the duties incumbent upon the receiver appointed. It provides that the attorney-general shall institute proceedings, on notice from the commissioner, "for the purpose of having a receiver appointed to take charge of such bank, and to wind up the affairs and business thereof for the benefit of the depositors, creditors and stockholders thereof." If it had been intended to exclude the creditors of an individual doing business as a private banker, the section quoted from should have been more specific. The legislature of 1897 evidently considered that creditors in the situation of plaintiff in error could not be excluded from participation in the bank's assets without some provision more definite in that respect than section 26 of the law of 1891, because in section 42 of chapter 47, Laws of 1897 (Gen. Stat. 1897, ch. 18, § 10; Gen. Stat. 1899, § 448), above set out, express provision is made for the exclusion of creditors standing in the position of the plaintiff in error from all participation in the assets of a private bank until the liabilities of the bank as such have been paid in full, thus making clear and plain in meaning what was before a matter of doubt and conjecture. By the enactment of said section 42, attributing to the legislature no intent to do a useless thing, must we not conclude that it was

legislating upon a subject which had not been covered by a previous enactment?

Defendant in error contends that, as section 35 of the act of 1891 and section 36 of the act of 1897 provide that any individual receiving money on deposit shall be considered as doing a banking business and "amenable" to all the provisions of the acts mentioned, their operation must be extended to the duties imposed upon a receiver in case of insolvency, and, in fact, require the assets of the bank to be devoted first to the payment of its depositors, creditors and stockholders. We do not think the word "amenable," as used in the sections referred to, should receive such instruction. By the act of 1891 certain reports were required to be made, and certain other duties required of bankers, and penalties inflicted upon persons doing business as such without a certificate from the bank commissioner, and we interpret the term "amenable" to refer to the personal duties and liablilities of the banker under the law, and not as having reference to the control and disposition of his assets. To say that a banker is "amenable" to the provisions of a law means that he must regulate his personal conduct with reference to the requirements of that law; but to say that the use of the word affects the manner in which his assets are to be distributed after they are taken out of his hands and transferred to a receiver would be giving to the word a broader definition or meaning than we think the legislature intended for it.

Again, it is urged that section 17 of the law of 1891, making it unlawful for any individual to transact a banking business or receive deposits for a longer period than six months after the passage of the act, without making a statement and receiving a certifi-

cate from the bank commissioner, brought private bankers within all the regulating provisions of the act and tended to the conclusion that the assets of such bank were to be disposed of by the bank's receiver for the benefit of depositors, creditors and stockholders only.   We do not see that section 17 tended in the direction contended for.   It had no reference to the distribution of assets or the giving of preferences.   It merely required an individual doing a banking business at the time the act went into effect to make a report, within six months thereafter, to the bank commissioner, and provided a penalty in case of failure so to do.   We are of the opinion, therefore, that there is nothing in the law of 1891 which prevents the plaintiff in error from participating in the assets, or their proceeds, in the hands of the receiver.   We do not think that the claim of the plaintiff in error could be affected by the passage of section 42 of the act of 1897, in that it placed obstacles in the way of the collection of his debt and postponed it to the rights of other creditors of the same debtor, which obstructions did not exist at the time the debts were contracted.   (*Beverly v. Barnitz,* 55 Kan. 451, 40 Pac. 325.)

We have examined into the motion made by the defendant in error, attacking the jurisdiction of this court to determine the right of the plaintiff in error to be heard, and find that it is without substantial merit.

Seeing nothing to prevent the plaintiff in error from coming in and participating as other creditors of the bank, as we interpret the provisions of the law of 1891, the judgment of the court below will be reversed, with directions to proceed in accordance with the views expressed in this opinion.